UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERRELL ADAMSON,            ) <br> ) <br> Plaintiff,            ) <br> ) <br> v.            ) <br> ) <br> CWI, INC.,            ) <br> ) <br> Defendant.            ) <br> ) | Case Number: 2:20-cv-00404-JHE |

## MEMORANDUM OPINION[1]

Plaintiff Terrell Adamson ("Adamson") initiated this action against CWI, Inc. d/b/a Camping World ("CWI") asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. ("Title VII") and 42 U.S.C. § 1981. (Doc. 1). CWI moves to dismiss or, in the alternative, to stay claims, and compel arbitration pursuant to the Federal Arbitration Act, U.S.C. § 1 et seq. (Doc. 5). Adamson has filed a response in opposition to the motion (doc. 14), and CWI has filed a reply brief (doc. 16). The motion is therefore ripe for review. For the reasons stated below, CWI's motion to dismiss and compel arbitration (doc. 5) is **GRANTED**.

### I. Background

Adamson was employed as a Product Service Advisor at CWI's Anniston, Alabama store. (Doc. 1 at ¶¶ 6, 13; doc. 5-1 at ¶ 2). Adamson alleges CWI discriminated against him on the basis of race with respect to promotions and in terminating his employment, purportedly in violation of

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.

Title VII and 42 U.S.C. § 1981.  (*See* doc. 1).

At the inception of his employment with CWI, Adamson signed an Arbitration Agreement, which, if enforceable, would require him to submit any dispute, claim, or controversy arising from his employment with CWI to arbitration.  (Doc. 5-1 at ¶¶ 5-6, pp. 5-7).  On October 8, 2018, the day Adamson was hired, he agreed to be bound by the Arbitration Agreement. (*Id.* at ¶ 5, pp. 5-7). Adamson signed and dated the Arbitration Agreement and included his social security number (*Id.*).  The Arbitration Agreement Adamson signed contains the following relevant, mandatory arbitration provisions:

> 1. Associate and the Company mutually agree that any and all claims or disputes described in paragraph 2 that Associate may have now or in the future with or against the Company, any parent or subsidiary of, or any entity affiliated with the Company…may be heard by a mediator mutually selected by the Company and the Associate; and that if mediation of a dispute by Associate or the Company is unsuccessful, **the claim or dispute shall be submitted to arbitration and heard and decided by a neutral arbitrator . . . .**
>
> 2. The disputes and claims covered by this Agreement include all claims or controversies, whether or not arising out of employment or termination of employment, that would constitute a cause of action in a court, including but not limited to . . . **claims for discrimination or other employment-related claims; . . . and claims for violation of any federal, state, local or other governmental law, statute, regulation, or ordinance including but not limited to claims, if any, based on the Civil Rights Act of 1991; Title VII of the civil [sic] Rights Act of 1964; [and] the Civil Rights Act of 1866 [42 U.S.C. § 1981] . . . .**
>
> 3. The arbitrator's decision shall be final and binding on Associate and the Company. **Associate and the Company acknowledge that arbitration is a substitute for traditional litigation and hereby waive their respective rights to file a private lawsuit and have that suit heard in court by a judge or a jury.**
>
> 4. Associate's waiver of his/her right to trial by jury and his/her agreement to submit all disputes . . . to final and binding arbitration is done voluntarily and knowingly. Associate fully understands that this Agreement precludes Associate from seeking redress in court for a dispute with or against the Company.  Class action claims and/or claims of multiple associates may be heard together only by written agreement of both the Company and the complaining associate(s)….
>
> 5. Associate acknowledges and agrees that the **Company engages in transactions**

> **involving interstate commerce and that his/her employment involves such commerce.** The parties expressly agree that **the Federal Arbitration Act shall govern this Agreement.**

(Doc. 5-1 at 5-7).

At the end of the Arbitration Agreement, there are blanks for the employee to date, sign, and provide his social security number and location. (Doc. 5-1 at 7). Then, there is a horizontal line across the page, and then two lines provided for the CWI representative to sign and date. (*Id.*). As noted above, Adamson dated, signed, and provided his social security number and location on the Arbitration Agreement. (*Id.*). Both lines for the CWI representative were left blank. (*Id.*).

On March 24, 2020, Adamson filed this action in this Court. (Doc. 1). CWI now seeks to dismiss (or alternatively stay) Adamson's claims and compel him to arbitration pursuant to the terms of the arbitration agreement. (Doc. 5).

## II. Analysis

### A. Adamson's Claims Should be Resolved Through Arbitration

An arbitration agreement is specifically enforceable under the Federal Arbitration Act ("FAA") if the following requirements are met: (1) the existence of a written agreement to arbitrate claims; (2) a nexus to interstate commerce; and (3) coverage of the claims by the arbitration clause. 9 U.S.C. § 2. Each of these elements is satisfied in this case.

There is no dispute that there is a nexus to interstate commerce or that Adamson's claims are covered by the arbitration clause. (*See* doc. 1 at ¶¶ 7-8) (the complaint asserting that CWI conducts business throughout the United States); (doc. 5-1 at p. 5, ¶ 2) (stating covered claims include "claims for violation of . . . Title VII of the [C]ivil Rights Act . . . .). Instead, Adamson contends there is no enforceable written agreement to arbitrate the claims because a CWI representative did not sign the written agreement, and, therefore, there is no mutual assent to

3

arbitrate. Specifically, Adamson contends his consent to arbitrate lapsed after CWI failed to execute the contract prior to termination of his employment and, alternatively, that he revoked his consent by filing this action. (Doc. 14 at 1, n.1).

When a party opposing arbitration raises contractual arguments against arbitration, the court must apply Alabama law regarding contract formation, while also considering the federal policy favoring arbitration. *Randolph v. Green Tree Fin. Corp.*, 991 F. Supp. 1410, 1421 (M.D. Ala. 1998). It is axiomatic that the FAA does not require the signature of either party for an arbitration agreement to be enforceable. *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005); *Middlebrooks v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. CV 98-HM-5015-NW, 1989 WL 80446, * 2 (N.D. Ala. Apr. 5, 1989). The Alabama Supreme Court has addressed the lack of a signature requirement, explaining as follows:

> While [a] written agreement is required for arbitration, however, there is no requirement that every single provision of the contract, including the arbitration clause, must be signed in order to form part of the agreement. Indeed, it is axiomatic that 'parties may become bound by the terms of the contract, even though they did not sign it, where their assent is otherwise indicated.'. . . The FAA has no separate requirement of a signed actitation clause.

*America's Home Place, Inc. v. Rampey*, 166 So. 3d 655, 659 (Ala. 2014) (quoting *Stiles v. Home Cable Concepts, Inc.*, 994 F. Supp. 1410 (M.D. Ala. 1998)). Instead, to form a contract, Alabama law requires "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Lyles v. Pioneer House. Sys.*, 858 So. 2d 226, 229 (Ala. 2003) (quoting *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997)). "The purpose of a signature on a contract is to show mutual assent; however, the existence of a contract may also be inferred from other external and objective manifestations of mutual assent." *Ex parte Rush*, 730 So. 2d 1175, 1177-78 (Ala. 1999). Because a signature is only one way to evidence mutual assent, an agreement to arbitrate

does not need to be signed, if there is other evidence of assent.[2]  *Id.* at 1178.  CWI asserts that its assent is evidence by the fact that CWI provided Adamson with the arbitration agreement, required Adamson to sign the agreement, and now seeks to enforce the agreement and compel arbitration. (Doc. 16 at 3-4).

In support of his position, that CWI's failure to sign the arbitration agreement demonstrates it did not intend to enter into the agreement, Adamson relies heavily on *Stover v. Valley Rubber, LLC*, No. 5:18-cv-1795-LSB, 2019 WL 4538682 (N.D. Ala. Sept. 19, 2019), a recently decided case from another judge on this Court.  *Stover* is not binding precedent, but, to the extent it is not distinguishable, it could be persuasive.  In *Stover*, the plaintiff signed two versions of an arbitration agreement, one of which was contained in an employee handbook.  2019 WL 4538682 at *3-4. Both versions of the arbitration agreement had three signature lines: one for the employee, one for the company representative, and one for a witness, while other documents in the employee handbook had signature lines only for the employee and a witness.  *Id.*  On both arbitration agreements, only the employee and witness lines were signed.  *Id.*

The employee handbook in *Stover* also contained language indicating that the arbitration

---

[2] Adamson also asserts that "numerous cases [have held] that "the absence of a signature under the arbitration clause shows a lack of mutuality and assent, where the contract contains a signature line specially for the arbitration clause." (Doc. 14 at 6) (citing *Med Ctr. Cars, Inc. v. Smith*, 727 So. 2d 9, 14 (Ala. 1998) (citations omitted)).  This quote is misleading because it is incomplete.  The complete quote reads as follows:

> the absence of a signature under the arbitration clause shows a lack of mutuality and assent, where the contract contains a signature line specifically for the arbitration clause, **but where [the plaintiff] did not sign on that line, although he signed on other lines that similarly indicated agreement to specific terms**.

*Med Ctr. Cars, Inc.*, 727 So. 2d at 14 (citations omitted).  This reasoning would only apply if CWI signed other provisions but did not sign the arbitration agreement.  Because there is no argument that occurred here, this point is not relevant.

5

agreement was a contract and explicitly stated that any contract affecting the terms and conditions of employment had to be signed by both the company's general manager and the employee. *Id.* at *8. Based on this language, the fact that there were three signatures lines where other documents in the employee handbook only had two, and "draw[ing] reasonable inferences in favor of Stover," the District Court found that the absence of a signature precluded enforcement. *Id.* at *11-12.

Here, there is no outside agreement that the Arbitration Agreement between CWI and Adamson must be signed by both parties. Although there is a signature line provided for CWI, the language of the Agreement anticipates that the employee will be the one to sign it, stating: "This arbitration agreement . . . is made . . . by and between . . . CWI, Inc. (Entity) and *the undersigned Associate*. . . ." (Doc. 5-1 at 5) (emphasis added). The next paragraph of the Arbitration Agreement also refers to the associate as the one who will sign the agreement:

> In consideration of CWI, Inc. providing prospective Associates with an application for employment, or an offer of employment or continued employment by CWI, Inc., and the compensation and job benefits that Associate has and/or will receive from CWI, Inc., the benefits of the speedy, impartial, and cost-effective dispute resolution procedure described below, and the mutual promises made by Associate and CWI, Inc. herein, *the undersigned Associate hereby agrees to the following*: . . . . .

(Doc. 5-1 at 5) (emphasis added).

Adamson also argues that CWI's associate handbook requires its Chief Operating Officer to sign the agreement (doc. 14 at 8-11); however, there is no such language in the associate's handbook. Adamson points to the following language:

> I understand that I am employed by The Company, Inc. as an "at will" associate. Due to business realities, the Company cannot guarantee employment for any specific duration, and I recognize that both the Company and I remain free to terminate the employment relationship at any time, with or without cause. I understand that nothing in the associate handbook is intended to create a contract or promise of employment, or expectation of employment, for a certain period of time. **The at-will employment relationship may not be altered, modified or amended by any means, except in a writing signed by the Company's Chief**

6

**Operations Officer**.

(Doc. 14-1 at 2) (emphasis added).  Adamson argues that when this language refers to "at will employment relationship," it really means that the COO must sign off on anything that affects any aspect of the employment relationship, including the arbitration agreement.  (Doc. 14 at 8-9).  When interpreting a contract, Alabama law requires a court give the terms of the agreement their clear and plain meaning and should presume the parties intended what the terms of the agreement clearly state. *Public Bldg. Authority of City of Huntsville v. St. Paul Fire & Marine Ins. Co.*, 80 So. 3d 171, 180 (Ala. 2010).  The handbook states that a writing signed by CWI's COO is required to alter the at-will employment relationship, not that a signature is required to alter any aspect of the employment relationship.  In fact, the language of the Arbitration Agreement leads to the opposite conclusion.  The Arbitration Agreement itself states that "[n]othing in this Agreement shall be construed to create any contract of employment, express or implied, *or to alter the at will employment relationship* between Associate and CWI, Inc. . . .  But this agreement does create a binding agreement to arbitrate all disputes as defined by the agreement."  (Doc. 5-1 at p. 7, ¶ 11).  Because the Arbitration Agreement does not alter, modify, or amend the at-will employment relationship, CWI's COO's signature was not required under the cited provision of the associate handbook.

CWI's actions of providing Adamson with the arbitration agreement, requiring Adamson to sign the agreement, and now seeking to enforce the agreement and compel arbitration demonstrate CWI's assent to be bound by the agreement to arbitrate.  Although there is a signature line for a CWI representative, the language of the Arbitration Agreement anticipates only the employee would sign the agreement.  Finally, there is no requirement within any of the other agreements that a CWI representative, specifically, the COO, sign the Arbitration Agreement

because the Arbitration Agreement did not alter, modify, or amend the at-will employment relationship.  For these reasons, in combination with the federal policy favoring arbitration, Adamson's claims must be resolved in arbitration.

### B. This Action is Due to be Dismissed

Although 9 U.S.C. § 3 speaks in terms of requiring a stay when an action is referred to arbitration, the weight of authority from district courts within this Circuit (and other circuit courts of appeals) supports a dismissal of an action when, due to an order compelling arbitration, there are no substantive claims left pending before the district court. *Halford v. Deer Valley Home Builders, Inc.*, No. 2:07cv180-ID(WO), 2007 WL 1229339 at *3 (M.D. Ala. Apr. 25, 2007); *see also Clayton v. Woodmen of World Life Ins. Soc.*, 981 F. Supp. 1447, 1451 (M.D. Ala. 1997); *Dale v. Comcast Corp.*, 453 F. Supp. 2d 1367, 1378 (N.D. Ga. 2006) (citing *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ); *Gilchrist v. Citifinancial Servs., Inc.*, No. 6:06cv1727-ORL-31KRS, 2007 WL 177821, *4 (M.D. Fla. Jan. 19, 2007). Furthermore, although the Eleventh Circuit has not directly addressed the propriety of dismissal in lieu of a stay under 9 U.S.C. § 3, it has "frequently affirmed where the district court compelled arbitration and dismissed the underlying case." *Gilchrist*, 2007 WL 177821 at *4 (citing *Samadi v. MBNA Am. Bank, N.A.*, 178 Fed. Appx. 863 (11th Cir. 2006), cert. denied, 127 S. Ct. 494 (2006); *Caley v. Gulf Stream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005); *Jackson v. Cintas Corp.*, 425 F.3d 1313 (11th Cir. 2005)). Accordingly, because all the claims in this action are required to be submitted to arbitration, CWI's motion to dismiss should be **GRANTED**, and this action will be dismissed without prejudice.

### III. Conclusion

There is a valid and enforceable arbitration agreement that covers Adamson's Title VII and

§1981 claims. Therefore, CWIs motion to compel arbitration (doc. 5) is **GRANTED**. Furthermore, because all the claims in this action are required to be submitted to arbitration, CWI's motion to dismiss is **GRANTED**, and this action will be dismissed without prejudice. A separate order will be entered.

     DONE this 19th day of June, 2020.

                                                  **JOHN H. ENGLAND, III**
                                                  UNITED STATES MAGISTRATE JUDGE